## BEATRICE B. CLARKE v. MINNETONKA & WHITE BEAR NAVIGATION COMPANY.[1]

March 2, 1928.

No. 26,575.

**Death of employe was not caused by an accident arising in course of his employment.**
> The finding of the industrial commission that the accident which caused the death of the employe did not arise out of or in the course of his employment is sustained by the evidence.

Workmen's Compensation Acts—C. J. p. 115 n. 37.

See note in L. R. A. 1917D, 130; L. R. A. 1918F, 915; 3 A. L. R. 1186; 4 A. L. R. 1864; 28 R. C. L. 812; 3 R. C. L. Supp. 1597; 4 R. C. L. Supp. 1864.

Certiorari to review an order of the industrial commission denying compensation for the death of relator's husband, Ernest J. Clarke. Affirmed.

*C. E. Warner, N. L. Wilson* and *Sidney A. Perkins,* for relator.
*C. J. Menz,* for respondent.

TAYLOR, C.

Certiorari to review the action of the industrial commission disallowing the claim of the relator for compensation for the death of her husband, Ernest J. Clarke.

The respondent employer conducted an amusement park known as Wildwood on the shore of White Bear Lake in the town of Lincoln in the county of Washington about 12 miles from the city of St. Paul. Clarke was a constable of the town of Lincoln. He was employed by respondent to act as a watchman, guard and traffic officer, but with the understanding that he would continue to perform his duties as constable and could be away whenever necessary for that purpose. He carried a revolver and possessed a motor-

[1]Reported in 218 N. W. 170.

cycle with a side-car which he used as occasion required. He had no prescribed hours but usually went on duty about one o'clock in the afternoon and remained until the place closed late in the evening.

Peter J. Metzdorf was superintendent of the park, and Russell J. Burke was an employe under him. On Mondays and certain other days Metzdorf went to the city of St. Paul with the money taken in and deposited it in the American National Bank. He made these trips in his own automobile with Burke as driver and Clarke following on his motorcycle as a guard. When they reached the outskirts of the city, Clarke would turn and go back to the park. On June 28, 1926, Metzdorf notified Clarke that he was going in with money the next morning. Clarke replied that he was going into the city on business of his own and would go all the way in. As they were preparing to start the next day, Clarke suggested that there was no need to use the automobile as he was going into the city and Burke could carry the money in his side-car, to which arrangement Metzdorf assented, but told Burke to come back at once on the electric railway on which he had transportation. Burke got into the side-car and they proceeded directly to the bank without stopping. Both went into the bank and Burke deposited the money. They returned to the motorcycle and Burke again got into the side-car. Clarke drove to the corner of the block and then turned in the opposite direction from the park. Burke asked where he was going and he replied to a garage. Burke said he had better get out and take the electric back. Clarke replied that he would get him back as quick as the electric could and he might as well ride with him. Burke concluded to do so. Clarke drove several blocks to the garage of J. G. Slaby, where he had the side-car taken off the motorcycle and another attached to it. While he was taking tools out of the side-car his revolver fell out of the holster and on striking the floor was discharged inflicting a wound on Clarke which resulted in his death.

The commission found that this injury did not arise out of or in the course of his employment.

While chasing a speeder on his motorcycle a few days before, a matter which had no connection with his duties for respondent, Clarke had an accident in consequence of which the fork of his motorcycle had been taken to the garage by Edward Miller to be straightened. The commission could find from the evidence that on returning Miller informed Clarke that Slaby had a side-car for which he could trade and that Clarke went to the garage pursuant to a previous arrangement to meet Miller there for the purpose of making the trade. Clarke had informed Metzdorf and Burke that he was going into the city on business of his own, but did not disclose the nature of this business to either. He evidently considered it a matter in which they were not concerned. The accident happened after he had completed the service he had undertaken for the respondent, and while he was engaged in this business of which the respondent had no knowledge.

Clarke used his motorcycle in performing his duties as constable, and also in performing his duty to respondent of guarding Metzdorf while transporting respondent's money to the city. Slaby testified that he found the wheel of the side-car in a bent position; that the bearings were out; and that the wheel had cut the axle so that a jar would break it. The relator argues that as the motorcycle was used by Clarke in performing certain of his duties for respondent it was necessary for him to keep it in proper condition for such use; that the testimony of Slaby shows it was not in condition to be used safely; and that Clarke should be deemed to have been acting in the line of his duty while making this exchange of side-cars.

It does not appear that the condition of the wheel and axle was known to anyone until discovered by Slaby at the garage. Clarke had carried Burke from the park to the bank without a stop or a suggestion that anything was wrong. The commission could properly find from the evidence that Clarke went to the garage by prearrangement for the purpose of trading side-cars, and at the time of the accident was engaged in an enterprise of his own outside the line of his duty. We find no ground for disturbing their finding upon this controlling issue of fact.

Order affirmed.